IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DEBRA K. HELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:08-CV-0079 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner, Social Security Administration | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE DECISION OF THE COMMISSIONER
AND GRANT PLAINTIFF'S MOTION TO REMAND**

Plaintiff DEBRA K. HELTON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits. Both parties have filed briefs, and, after briefs were filed, plaintiff filed a motion for leave to file new evidence and to remand the case. As of this date, defendant has not filed any pleading in opposition to the motion. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED, the plaintiff's motion to remand the case be GRANTED, and the case be REMANDED for an award of benefits. It is alternatively recommended that the administrative decision be reversed and the case remanded for development of the record regarding plaintiff's mental disability.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

In March 2005, plaintiff applied for disability insurance benefits. (Transcript [hereinafter "Tr."], pg. 17). While she has a combination of physical impairments, such as obesity, a history of ovarian cancer surgery, a once-fractured distal fibula, and chronic headaches, her main complaint was back pain. (Tr. 19). Plaintiff stated her disability onset date was June 1, 2003, when she was diagnosed with scoliosis—a diagnosis later considered questionable by a doctor evaluating plaintiff on behalf of the Commissioner. (Tr. 94, 126).

While not her primary complaint, plaintiff made it known that she also suffered from a mental impairment. Plaintiff was not represented at the hearing before the Administrative Law Judge (ALJ) in July 2007. At that hearing, she testified, "I have no education to help me get -- to do any other job because I have a learning disability that holds me back . . . See I read backwards and there is really no way of learning to read forwards easily." (Tr. 163). She additionally stated she dropped out of school after the seventh grade and that she was in special education classes in school. (Tr. 165). After the vocational expert testified that plaintiff could work as a press operator, a cafeteria attendant, or an electronics worker, plaintiff stated,

> In my past, I've tried working as a press operator, when I'm back [sic] in the eighties. Back in the seventies, I've tried working as a cafeteria person. They wouldn't hire me because of my education because I was not fast enough to do it because I have a disability of my learning is, [sic] I'm too slow in learning stuff and they need people that are faster than that to learn this stuff.

(Tr. 180). Likewise, plaintiff's school records, which were part of the record before the ALJ and were considered by him, indicated plaintiff was in special education classes from first grade until she dropped out of school in the seventh grade. (Tr. 73). The vast majority of her grades in the

seven years of special education classes were C's. (Tr. 73).

In his August 2007 decision, the ALJ acknowledged,

> The claimant . . . testified that she was unable to work because of back pain; a lumbar strain that would never heal; inability to stand on her feet for longer than 30 minutes at a time; inability to lift over 50 pounds at a time; high blood pressure; a learning disability; recent headaches; and other problems.
>
> . . .
>
> In elementary school, the claimant was enrolled in special education classes, in which she made B's and C's. The evidence of record does not support a finding of illiteracy under applicable provisions of the Social Security Act.

(Tr. 19, 23). The ALJ found plaintiff did not have a listed impairment at step three of the sequential analysis, holding, "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 21); *see* 20 CFR § 404.1520(4). The ALJ also found, at step four, that plaintiff was unable to perform past relevant work, but further found she had the residual functional capacity to perform a full range of light work. (Tr. 22, 23).

In October 2007, plaintiff filed another application for supplemental security income (SSI). She was represented by an attorney in this second social security filing. The ALJ appointed to her case, who was not the same ALJ in her first social security claim, granted plaintiff's application.[1] In her SSI application, plaintiff again alleged an onset date of June 1, 2003. (Decision of ALJ, Exhibit Plaintiff's Motion to Submit New Evidence and for Remand with Incorporated Brief, filed 8/06/09, document 17, pg. 5)). Because SSI does not become payable until the month after the month in which the application is filed, however, plaintiff received benefits only beginning in

---

[1] Although the record of this decision is not before the Court, plaintiff has moved to file the ALJ's June 3, 2009 decision as new evidence for consideration in the case. This Court has granted that motion this date.

November 2007. (*Id.*). The ALJ did not open plaintiff's prior application for disability benefits.

After plaintiff filed her second SSI application, she was tested for mental impairments. (*Id.*, pg. 8). "[S]he was evaluated in April 2008 by Michael Vandehey, Ph.D. WAIS-III testing revealed a Verbal IQ of 53, Performance IQ of 55, and Full Scale IQ of 50. Dr Vandehey diagnosed the claimant with generalized anxiety disorder and mild mental retardation." (*Id.*). Based on these results, the second ALJ determined:

> The claimant's impairments meet listing 12.05B. The "paragraph B" criteria of this listing are met because the claimant has mental retardation initially manifested before age 22 with a valid verbal, performance, or full scale IQ of 59 or less . . . As noted above . . . the claimant was diagnosed with mild mental retardation. Further, it appears from the evidence of record that a January 1965 screening by the State of Mississippi Department of Education identified the claimant as requiring Special Education since age 6. Further, the evidence shows that the claimant was enrolled in Special Education classes each year from 1965 to when she dropped out of school in 1973 at age 14.

(*Id.*, pg. 8) (internal citations omitted).

Plaintiff contends the Commissioner's action in granting her SSI benefits, based upon new evidence of plaintiff's mental retardation, further evidences the first ALJ's failure to fully and fairly develop the record, especially considering the fact plaintiff was unrepresented. This Court has granted plaintiff's motion to submit new evidence, i.e., the ALJ's June 2009 decision granting plaintiff SSI benefits. With that new evidence, plaintiff has established she has a full scale IQ of 50, as set forth in the second decision. Moreover, because the second ALJ determined this mental retardation manifested during the developmental period, i.e. before age twenty two, the Court accepts the administrative finding that plaintiff meets the requirements of section 12.05B of 20 CFR Part 404, Subpart P, Appendix 1 (hereinafter "listing 12.05B"). Defendant has neither challenged nor rebutted this evidence. Therefore, the Court recommends the Commissioner's decision be

reversed and the case remanded for an award of benefits at step three. Even if this Court were to not consider the new evidence plaintiff has submitted, remand would still be warranted for failure to properly develop the record.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

As the Supreme Court has recognized, the ALJ in all Social Security proceedings has the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000). When dealing with an unrepresented claimant, this basic obligation rises to a "special duty" to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). When the ALJ fails in that duty, "he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported

by substantial evidence." *Id.* at 1219. The ALJ's failure to adequately develop the record is not alone a ground for reversal, however; the claimant must still show prejudice in the form of evidence before the district court that would have altered the outcome. *Id.* at 1220.

# III.
## ISSUES PRESENTED

In her more recent motion for remand, plaintiff presented the issue of whether the Commissioner's June 2009 decision finding her disabled for SSI purposes warrants remand of the earlier disability determination. In her original brief, plaintiff presented the issue of "[w]hether the Administrative Law Judge failed to fully and fairly develop the record, given that Plaintiff was unrepresented, and if so, whether Plaintiff was prejudiced by such failure." (Plaintiff's Brief, pg. 1).

# IV.
## MERITS

### A. Remand Based on New Evidence

As the instant case demonstrates, new evidence relating to the disability for which benefits are sought may arise after the Commissioner has disposed of the case. "When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Remand is justified, however, only if the claimant makes "a showing of 'good cause' for failing to provide this [new] evidence at the original proceedings." *Id.*

20 CFR, Part 404, Subpart P, Appendix 1, section 12.05 establishes:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .

B. A valid verbal, performance, or full scale IQ of 59 or less.

In this case, the ALJ denied social security disability benefits to plaintiff in August 2007. (Tr. 25). The Appeals Council affirmed the ALJ's decision in March 2008. (Tr. 4). In April 2008, plaintiff was diagnosed by a psychologist with mild mental retardation as evidenced by her full scale IQ of 50. (Decision of ALJ, Exhibit Plaintiff's Motion to Submit New Evidence and for Remand with Incorporated Brief, filed 8/06/09, document 17, pg. 4)). Based in part on the IQ test results, a second ALJ, in June 2009, determined plaintiff met listing 12.05B and was disabled. (*Id.*). Neither the ALJ in 2009 nor the Appeals Council in 2008 had the benefit of the results from plaintiff's IQ testing or the later favorable disability determination when making the initial unfavorable disability determination.

Defendant has not contested the validity of the second disability determination nor the testing upon which it is based, and the Court has no reason to question it. The testing establishes that plaintiff has a full scale IQ of 50. Moreover, given plaintiff's elementary school records and her testimony regarding her difficulty in learning, and the generally accepted principle that, absent brain injury, mental retardation is a life-long impairment, the second ALJ's decision that the onset of the mental retardation was before age twenty two is reasonable. *See, e.g., Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) (finding there is a presumption that "IQs remain fairly constant throughout life"); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (stating, "Mental retardation is not normally a condition that improves as an affected person ages . . . Rather, a person's IQ is

presumed to remain stable over time in a claimant's intellectual functioning"); *Luckey v. Dep't of Health & Human Serv.*, 890 F.2d 666 (4th Cir. 1989) ("in the absence of any evidence of a change in claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant"); *Guzman v. Bowen*, 801 F.2d 273, 276-75 (7th Cir. 1986) (adopting a presumption that low IQ exists before the first IQ test).

The IQ score of less than 59 and the Commissioner's more recent determination that plaintiff meets listing 12.05B are clearly material since they result in a finding plaintiff meets a listing and classify her as *per se* disabled. Further, there is no evidence plaintiff's mental retardation had an onset date after the first disability determination. Indeed, plaintiff's record of mental impairment and testimony at the disability hearing about how her learning disability limited her ability to work indicates she was suffering from her mental impairment during the time period for which the disability benefits were denied. The second ALJ's determination to grant plaintiff SSI benefits also indicates plaintiff was mentally retarded during the time period for which the disability benefits were originally denied. Given these considerations, it is clear the new evidence, i.e. the IQ testing and the ALJ's SSI decision, would change the outcome of the first disability decision. *See Ripley*, 67 F.3d at 555.

The fact that this new evidence establishes disability at step three, however, is not enough. Plaintiff must also demonstrate good cause for failing to provide this evidence at the original proceedings. *See id.* In this case, the new evidence was not previously available, as it did not come into existence until over one year after the ALJ's decision became final. Moreover, plaintiff, who is mentally retarded and who was unrepresented at the time, could not be expected to identify a potential disability listed in the voluminous Appendix 1 of 20 CFR, Part 404, Subpart P and

independently seek proper testing to support her potential claim or otherwise demonstrate the Commissioner would later determine she was, in fact, disabled. There is no basis to find that plaintiff understood what her IQ score was or how it was significant. Plaintiff obviously did as best she could. She informed the ALJ of her mental condition and how if affected her. Consequently, plaintiff meets the good cause requirement. *See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (holding a claimant met the good cause requirement when the new evidence upon which remand was granted was not available at the time of the original hearing). There is more than a reasonable probability the new evidence would change the outcome of the decision. In fact, the new evidence warrants a finding of disabled. Plaintiff has demonstrated good cause for failing to provide this evidence at the original proceedings. *See id*.

### B. Remand Based on Failure to Fully Develop the Record

In her original brief to this Court, plaintiff contends the ALJ failed to fully and fairly develop the record and that she was prejudiced by such failure. Even if the Court did not have the benefit of the June 2009 decision granting plaintiff disabled status, reversal and remand would be warranted based solely upon this contention. As reviewed above, plaintiff's school records showed plaintiff struggled in special education classes from age six until she dropped out of school at age fourteen. In her legible filings with the Commissioner, plaintiff misspelled basic words such as daughter (spelled "dauer"), wreck (spelled "rick"), place (spelled "pleas"), leader (spelled "leger"), family (spelled "famly"), and others. (Tr. 75, 76, 103, 106, 107). She had difficulty composing simple sentences, for example, she said her physical problems would worsen "Wind I woud help my hubson are doing housework I had to lifted him in he wight 350 are more." (Tr. 103). When describing the lifting activities of one of her previous jobs as a cashier and stocker, plaintiff stated, "ever night had

to stock the coorer" and "stockig the crool ever night." (Tr. 109, 110). In addition to this evidence, plaintiff testified she had difficulty reading and was unable to obtain jobs as a press operator and a cafeteria attendant because she was "too slow." (Tr. 163, 180).

Further, plaintiff was an unrepresented claimant, and the ALJ had a "special duty" to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *See Kane*, 731 F.2d at 1220. Given this record, replete with indications that plaintiff was mentally handicapped since a very young age, the ALJ should have, at a minimum, sought intelligence testing for plaintiff. The fact that plaintiff was repeatedly denied benefits until she hired an attorney demonstrates how she suffered from being unrepresented, and how the record should have been further developed by the ALJ.

While isolated comments or "a few instances in the record noting diminished intelligence [might] not require that the ALJ order an IQ test in order to discharge his duty to fully and fairly develop the record," *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996), there were more than isolated comments and scant references to diminished intelligence in this case. The evidence established that plaintiff had struggled with learning since age six and that she had completely given up school at age fourteen. She was in special education classes earning marginal grades. She continued to struggle with diminished intelligence, as demonstrated every time she filed something with the Commissioner. Plaintiff herself told the ALJ she could not work at two of the three jobs suggested by the vocational expert at the hearing because she had tried but was "too slow" to get hired. (Tr. 180). These facts were clearly sufficient to alert the ALJ that further development of the record was warranted and that intelligence testing was necessary in order to make an informed decision based on a full record. Therefore, even if plaintiff's

request for the Court to consider the new evidence were denied, remand, for the reasons cited above, would be appropriate.

Moreover, the later testing, now before this Court via the June 2009 ALJ decision granting plaintiff disabled status, established plaintiff in fact was mentally retarded. (Decision of ALJ, Exhibit Plaintiff's Motion to Submit New Evidence and for Remand with Incorporated Brief, filed 8/06/09, document 17, pg. 8)). Had the first ALJ known plaintiff had a full scale IQ of 50, he would have been forced to determine whether she qualified under listing 12.05B. As it did with the second ALJ to evaluate her record, knowing plaintiff's IQ in the context of her school records would have altered the first ALJ's determination that plaintiff was not disabled. *See Kane*, 731 F.2d at 1219. Because the ALJ failed in his duty to develop a full and fair record, he did not have sufficient facts upon which to make an informed decision, and his ultimate decision was not supported by substantial evidence. *Id.* This failure prejudiced plaintiff, and remand is proper on this ground.

## V.
## RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff not disabled and not entitled to disability benefits be REVERSED, that plaintiff's motion to remand the case be GRANTED, and the case be REMANDED.

In the opinion of the undersigned, the unrebutted new evidence establishes that plaintiff meets a listed impairment as set forth in Appendix 1 of 20 CFR, Part 404, Subpart P. It would be a waste of time and resources to do further mental testing on plaintiff upon remand. Plaintiff's mental impairment has been established. Therefore, it is the recommendation of the undersigned

that remand be for the limited purpose of finding plaintiff disabled and awarding benefits at step three of the sequential process.

If the above recommendation is not adopted, then it is the alternative recommendation of the undersigned that the finding be reversed, that plaintiff's motion to remand the case be granted, and the case be remanded for further development of the record regarding plaintiff's mental abilities during the pertinent time period.

If defendant has any evidence and/or argument that plaintiff's condition during the period at issue did not meet the listed impairment, he shall include such argument in any objections he files to this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 22nd day of April, 2011.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).